UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Daryl Boire,

     Plaintiff,

v.

The Gorman Group, LLC &
Gorman Bros., Inc.

     Defendants.

Civil Action No. _____

## COMPLAINT AND DEMAND FOR JURY TRIAL

1.    Plaintiff Daryl Boire brings this Complaint for negligence against Defendants The Gorman Group, LLC and Gorman Bros., Inc.

## PARTIES

2.    Plaintiff Daryl Boire ("Mr. Boire") is a resident of 14 Guernsey Court, Chichester, Merrimack County, New Hampshire.

3.    Defendant The Gorman Group, LLC ("The Gorman Group") is a New York Limited Liability Company with a principal place of business located at 200 Church Street, Port of Albany, Albany, New York 12202.

4.    Defendant Gorman Bros., Inc. ("Gorman Brothers") is a New York Business Corporation with a principal place of business located at 200 Church Street, Port of Albany, Albany, New York 12202.  The entity was formerly but is no longer is registered to do business as a Foreign Profit Corporation in the State of New Hampshire.

## JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000.00 and is between citizens of different States.

1

6. This Court has personal jurisdiction over Defendants because, among other reasons and as set forth in greater detail below, they did business in New Hampshire; the claims in this complaint arise out of Defendants' contacts within New Hampshire; Defendants, through their acts and omissions, purposefully availed themselves of the laws of New Hampshire; and it is reasonable and fair to exercise jurisdiction over Defendants in New Hampshire.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTS

8. On July 25, 2019 at around 3:30 p.m., Mr. Boire was riding his bicycle southbound on Manchester Street in Concord, New Hampshire, which is also known as Route 3.

9. Around the area where Route 3 approaches and then crosses the Soucook River, Mr. Boire encountered a road construction zone.

10. Defendant The Gorman Group was the contractor awarded the bid to perform the work that was occurring in the construction zone, and was in fact responsible for performing the same.

11. Upon information and belief, Gorman Brothers is an entity directly affiliated with and in the same business as The Gorman Group.

12. Upon information and belief, Gorman Brothers was also responsible for the work in the construction zone.

13. The scope of the work was set forth at least in part in by a contract with the New Hampshire Department of Transportation referred to as contract number 41527.

14. The work in the construction zone generally involved milling and then repaving a number of noncontiguous sections of Route 3 in the southbound lane and shoulder.

15. The construction zone was more than a half mile long.

16. At all relevant times it was reasonably foreseeable to The Gorman Group and/or Gorman Brothers that bicyclists would be passing through the construction zone.

17. It is reasonably foreseeable that milled sections of pavement present a hazard for bicyclists.

18. Upon information and belief, Defendants The Gorman Group and/or Gorman Brothers were responsible for installing and maintaining appropriate and safe signage in the construction zone.

19. Upon information and belief, Defendants The Gorman Group and/or Gorman Brothers were also responsible for following a "Traffic Control Plan."

20. The "Traffic Control Plan" incorporated and included, amongst other things, Section 619 of the "Standard Specifications."

21. Section 619 of the "Standard Specifications" includes a requirement that "Construction signs shall be erected at the locations indicated on the plans or as approved."

22. Upon information and belief, a plan for construction zone signage was created with detailed and specific signage requirements for marking the construction zone and each and every section of milled pavement in the construction zone.

23. On July 25, 2019, the milling in the southbound lane and shoulder had been at least partially completed, but the repaving had not begun.

24. As Mr. Boire approached the beginning of the construction zone, he encountered one single orange "Bump" sign.

25.     Despite the single "Bump" sign, the construction zone was inadequately marked because there was no "Grooved Pavement Ahead" sign as called for in the signage plans, which are reproduced in part (as they pertain to the beginning of the construction zone) below:



26.     The inadequate signage created an unreasonably dangerous condition and provided inadequate notice of the multiple sections of milling ahead.

27.     Video taken by Mr. Boire on July 27, 2019, just two days later, confirms that only one "Bump" sign was placed leading into the construction zone and no "Grooved Pavement Ahead" was in place.

28.     The first section of milled pavement in the construction zone, which was approximately 350 feet long, is shown above and labeled as "Souhbound [sic] Patch #1."

29. Mr. Boire passed over the first section of milled pavement without incident.

30. After the first section of milled pavement, the road surface returned to regular (unmilled) pavement.

31. As Mr. Boire continued towards the Soucook River crossing there was no warning at all that additional milled sections were ahead.

32. As Mr. Boire approached the section shown below and labeled as "Southbound Patch #2," there was no bump sign or any marking at all to indicate or warn of the second milled section of pavement, despite the fact the signage plan called for the same as set forth below:



33. The video taken by Mr. Boire confirms that no signage was in place at all leading into Southbound Patch #2, and there was no warning of the milled pavement he was about to encounter.

34. Despite his exercise of due care at all times, and as a direct, proximate and foreseeable result of the inadequate signage in the construction zone, as Mr. Boire approached "Southbound Patch #2" he was unable to see or anticipate the unreasonably dangerous milled pavement, and he was unable to slow his bicycle to safely navigate it.

35. As a direct, proximate and foreseeable result of the conduct of Defendants The Gorman Group and Gorman Brothers as set forth above, Mr. Boire hit the milled area without warning and was unable to maintain control of his bicycle.

36. As a direct, proximate and foreseeable result of the conduct of Defendants The Gorman Group and Gorman Brothers as set forth above, Mr. Boire was violently thrown from his bicycle, impacted and tumbled over the top of the guardrail, and sustained serious injuries including but not limited to an open radius fracture of his right forearm and a full-thickness laceration of his right lateral thigh.

## **FIRST COUNT: NEGLIGENCE**

Daryl Boire against Defendants The Gorman Group, LLC and Gorman Bros., Inc.

37. Plaintiff realleges each allegation above as if set forth herein.

38. Defendants The Gorman Group and Gorman Brothers owed Mr. Boire a duty to use ordinary care to maintain the construction zone in a reasonably safe condition.

39. Defendants The Gorman Group and Gorman Brothers owed Mr. Boire a duty to maintain the construction zone in accordance with applicable plans, rules and regulations.

40.     Defendants The Gorman Group and Gorman Brothers owed Mr. Boire a duty to maintain the construction zone in accordance with the terms of the contract it entered to perform the work.

41.     Defendants The Gorman Group and Gorman Brothers breached those duties that they owed to the Plaintiff by failing to provide proper signage on the construction site and by failing to provide any signage at all to mark the second section of milled pavement where Mr. Boire crashed.

42.     Defendants The Gorman Group and Gorman Brothers also owed the Plaintiff a duty to warn him of dangerous conditions, and to take reasonable precautions to protect him against foreseeable dangers in the construction zone.

43.     Defendants The Gorman Group and Gorman Brothers breached those duties that they owed to the Plaintiff by failing to provide proper signage on the construction site and by failing to provide any signage at all to mark the second section of milled pavement where Mr. Boire crashed.

44.     As a direct and proximate result of the Defendant's negligence set forth above, the Plaintiff Daryl Boire has suffered and continues to suffer physical injuries, severe pain and suffering, loss of enjoyment of life, and has incurred and will continue to incur reasonable and necessary medical expenses and lost wages, all within the jurisdictional limits of this Court.

WHEREFORE, Mr. Boire respectfully requests that this Honorable Court:

    A.     Enter judgment in his favor on all counts;

    B.     Award him all the damages to which he is entitled;

    C.     Grant such further relief as it deems just and equitable.

Respectfully Submitted,

Dated: August 26, 2020

/s/ D. Michael Noonan
D. Michael Noonan, Esq. #8214
mnoonan@shaheengordon.com
Attorney for the Plaintiff
SHAHEEN & GORDON, P.A.
353 Central Avenue, 2nd Floor
Dover, NH  03821-0977
(603) 749-5000


/s/ Nicholas G. Kline
Nicholas G. Kline, Esq. #268422
nkline@shaheengordon.com
Attorney for the Plaintiff
SHAHEEN & GORDON, P.A.
353 Central Avenue, 2nd Floor
Dover, NH  03821-0977
(603) 749-5000